**RAY et al. v. S. T. JOHNSON CO.**

District Court, E. D. Pennsylvania. October 30, 1928.

No. 3711.

Charles E. Townsend, of San Francisco, Cal., and Cyrus N. Anderson, of Philadelphia, Pa., for plaintiffs.

Joshua R. H. Potts, T. Bertram Humphries, and George B. Parkinson, all of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge ▪ This is a suit in equity for the infringement of three letters patent for rotary oil burners, issued to William R. Ray, and for convenience referred to in the record and in this opinion as the first, second, and third Ray patents, and numbered respectively 1,193,-819, dated August 8, 1916 (filed November 30, 1914); 1,285,376 dated November 19, 1918, (filed May 8, 1916); and 1,373,149, dated March 29, 1921 (filed September 25, 1916). The plaintiff corporation is the exclusive licensee under the Ray patents. As to all three patents, the defenses are invalidity of the claims sued upon for anticipation and want of invention and novelty. Noninfringement was also pleaded, but was not seriously insisted upon, and it is clear that the defendant's burner is a close imitation of the plaintiff's patented device. The first and second Ray patents were held invalid as to all claims involved in this suit by the Circuit Court of Appeals for the Ninth Circuit in the case of Ray et al. v. Bunting Iron Works, 4 F.(2d) 214. In considering these patents in this case, that decision must be borne in mind. The rule of comity requires this court to follow it, unless it be shown beyond doubt to be erroneous, or unless the case here presented such an entirely different record that we would be convinced that the decision of the Circuit Court of Appeals would have been otherwise upon the record as here presented.

In presenting its case to this court, the defendant's principal reliance was placed upon the same prior art patents (with some additional patents) on the strength of which the Circuit Court of Appeals for the Ninth circuit declared the first two Ray patents invalid. The plaintiff in rebuttal introduced a number of depositions of witnesses taken in California, designed to show a general recognition of the plaintiff's device as an outstanding advance of great importance in the oil-burning field, and that the invention in suit solved a problem of long standing and supplied a long-felt want. The plaintiff also produced testimony supplemented by courtroom demonstrations directed to the point that the defendant's principal prior art patents were unworkable, and therefore, since without utility, could not be considered as anticipations. This evidence, which was not in the earlier suit, the plaintiff claims relieves us of the duty of following the decision of the Circuit Court of Appeals of another circuit. Thorough consideration of it, however, not only fails to bring us to a conclusion opposed to that reached by the Circuit Court of Appeals for the Ninth Circuit, but fails to raise any doubt of the correctness of that conclusion.

634

■ Upon the issue of patentable novelty in a mechanical patent the first and most important consideration is a comparison of the patented structure with the structures of the prior art. For the purpose of assisting the court in making such comparisons the testimony of the parties themselves and of experts is usually valuable to draw the attention of the court to essential elements, to apprise the court of the physical laws governing the operation of the device, and to explain the functions of the various parts. When a comparison so made leaves the issue in doubt, resort is properly had to a number of other matters, such as the presumptions arising from the history of the proceedings in the Patent Office to obtain the patent and from its final grant, evidence of a long-continued and unsuccessful search in the art for the results accomplished by the patent, evidence of immediate and striking commercial success, the fact that the defendant, discarding all other forms of the device, has promptly and closely imitated the plaintiff, and the like. Where, however, the want of patentable novelty is clear, from an intelligent and informed comparison of the device in issue with the prior art, such evidence will be accorded no weight. It will not be used to create a doubt where none otherwise exists.

■ Taking up the first Ray patent, which comprises the features essential to the operation of all three patents, we find that these features (stated in our own language and not that of the claims) are (a) a fan or blower, in a casing, creating a strong uniform blast of air; (b) a comparatively small rapidly revolving oil cup, from the rim of which the oil is cast off in the form of a thin film by its rapid rotation; and (c) a nozzle which delivers the air blast at the rim of the cup in such manner as to atomize the oil film and direct it in an annular cloud into the line of the air.

Now, turning to the prior art, there is, of course, nothing new in using a centrifugal fan to create an air current. The plaintiff contends that an important new feature of this instrumentality in his patent is a diaphragm, placed between the blades of the fan and the nozzle, which performs an important function in making the air current as delivered at the nozzle smooth and uniform. Whether or not this is true, the entire structure of the plaintiff's blower and casing enclosing it is anticipated by patent No. 548,647 (1895) to Mack. Perhaps the interior fan casing used in Mack may not accurately be described as a diaphragm, but it nevertheless is an equivalent, and was obviously inserted for the same purpose. The plaintiff's fan may be a more efficiently operated blower than Mack's, but it certainly contains no feature of patentable novelty over it.

The idea of centrifugally discharging oil in a fine film by means of a rapidly rotating cup, into which the oil is introduced in small quantities, dates back to Cook's patent, No. 73,506, of 1868, and oil cups for this purpose were also used in the following patents: Klein, No. 473,759 (1892); Eddy, No. 540,-650 (1895); and Feeron, No. 613,131 (1898); and possibly others. The precise shape of the cup may, as the plaintiff contends, be of extreme importance in producing the proper kind of oil film; but that shape appears almost exactly in the Feeron patent, and in addition I am satisfied that the shaping of the cup to the form adopted by the plaintiff, while possibly an improvement, is not a patentable one over any of the prior art cups.

We now come to the feature of the alleged invention which is most strongly insisted upon by the plaintiff. In fact, his argument makes it practically the essence of his device. He shows by testimony the importance of efficient atomization of oil, in order to get not only complete combustion, but also flexibility (that is, the ability to use oils of all grades without the necessity of preheating the heavier kinds). He says that the great virtue of his patent is that it accomplishes such atomization more completely and more satisfactorily than any prior burners, and that this result is accomplished by delivery of a high-velocity air current within a very small field at or close to the burner tip. The centrifugal force creating the film must not be too great, and the air jet must be applied in such a way that instant and violent action takes place within an extremely small space and the two forces effect the transformation of a solid mass of oil into minute particles in a single operation. This he says can only be accomplished by his nozzle, a feature which, he contends, is lacking in the prior art patents. It is an interesting argument, forcefully presented, but it will not survive a consideration of the Klein and Eddy patents referred to above. In the Eddy patent the nozzle fairly answers the description of claim 12, and, in addition to similarities of structure of the Klein patent, a reading of its claim and specifications shows that the patentee had in mind the precise means and methods of atomization claimed by the plaintiff as original. The following may be quoted from the Klein specifications:

"The air as it passes out of the nozzle impinges on the lip $a'$ and is thrown toward the distributor, so it will be seen that the air current meets the centrifugally thrown oil almost squarely and the commingling of the two fluids must be perfect. The centrifugal action of the distributor is so great that the fluid thrown from it is very thoroughly atomized, and, being thrown as it is with great force so directly against a current of compressed air just released and under rapid expansion, the particles of oil or other fluid are thoroughly separated."

It is true that the Klein nozzle had a slight inwardly converging lip, but that did not change the basic principle of its operation, and, if the plaintiff's nozzle is an improvement, it was merely a matter of perfecting mechanical details. It is quite clear that the basic idea of atomization by the coaction of air blast and centrifugal force appears in both Eddy and Klein.

■ I would not go so far as to sustain the defendant's contention that Mack is a complete anticipation of the plaintiff's patent. It is apparent that Mack did not have the principle of the use of a high velocity annular air jet as one of the component agents for effecting atomization. I am inclined to think that the plaintiff's contention is correct that the nozzle of the Mack device was intended rather as a torch or carburetor than as an atomizing burner. It is not necessary, however, to show complete anticipation in a single patent, if the plaintiff has selected and put together the most desirable parts of different machines in kindred art to make the new machine, but in which each part operates in the same way as it operated before and effects the same result. Huebner-Toledo Breweries Co. v. Mathews Gravity Carrier Co. (C. C. A.) 253 F. 435.

I am therefore of the opinion that, based upon his own claim, the plaintiff's device is wanting in patentable novelty. Even if this were a case of first impressions, I should so hold. The decision of the Circuit Court of Appeals for the Ninth Circuit will be followed.

In view of that decision, discussion of the second Ray patent is entirely unnecessary. As to the third Ray patent, very little need be said. Its essential feature is a central bearing member upon which the various operating elements of the device are assembled and mounted. I do not think that it shows any invention, but if it did it would be anticipated by patent No. 856,648, Keith (1908), and probably Coppus, No. 1,056,151 (1913) and D'Olier, No. 1,129,178 (1915).

From what has been said it would follow that the evidence contained in the San Francisco depositions as to prior failures to obtain a satisfactory burner, and the prompt adoption in the trade of the plaintiff's device, are entitled to little, if any, weight. I have, however, carefully considered it, and may say that this evidence falls far short of establishing even the facts which the plaintiff claims for it. It does establish that the plaintiff's burner is a good burner, that it has generally given satisfaction, that in some branches of the field it has displaced other burners, which were not good burners, and that it is making some headway in other fields, particularly in the marine boiler field. It is not sufficient to compel any departure from the conclusion reached from a study of the plaintiff's structure and the prior art devices.

The same thing may be said of the plaintiff's practical demonstration and testimony directed to showing the Mack and Klein patents to be unworkable. The experiments were conducted by models made by the plaintiff's witnesses from the prior patent drawings. It is no reflection upon the honesty or fairness of the plaintiff's witnesses to say that as a matter of course the motors did not work. No doubt the models were constructed with the purpose of adhering to the patent drawings as closely and accurately as possible, but even so, as was said in Crown Cork & Seal Co. v. Aluminum Stopper Co. (C. C. A.) 108 F. 845:

"The object of the drawings filed in the Patent Office is attained if they clearly exhibit the principles involved, and a rigid adherence to dimensions therein shown is not required or expected if an intelligent mechanic skilled in the art would so proportion the dimensions given as to secure practical results. The inutility or inoperativeness of the device is not demonstrated by the fact that experiments made with material identical in form and proportion of parts with the drawings failed to produce successful results, and especially where it does not appear that the experimenter was desirous of success."

The bill will be dismissed, with costs.